THE STATE, JOSEPHINE TAINTOR, PROSECUTRIX, v. THE MAYOR AND COMMON COUNCIL OF THE TOWN OF MORRISTOWN.

THE STATE, ABRAHAM CROSS, PROSECUTOR, v. THE SAME.

1. The authority to make and establish ordinances and regulations for regulating streets and sidewalks, granted to a municipal corporation

by its charter, includes the power of determining the respective widths of the street and sidewalks, and how the space appropriated to both shall be apportioned between the two.

2. The act of March 14th, 1851, entitled "an act to provide for the construction of sidewalks along highways, for the accommodation of foot travelers," (*Nix. Dig.* 751) does not apply to the streets of cities and towns, the charters of which confer on the corporation the authority to regulate streets and sidewalks, on the principle that the general legislation on a particular subject must give way to the special legislation on the same subject.

3. A grant by the legislature to a municipal corporation of power to legislate by ordinance on enumerated subjects connected with its municipal affairs, is an addition to that power of making by-laws, which is incidental to the creation of a corporation.

4. The seventh section of the supplement of March 15th, 1866, to the charter of the town of Morristown, provides for the appointment by the common council, by ordinance, of a commission composed of the town surveyor and four disinterested freeholders, resident in the town, to run, mark, lay out, and designate the lines and courses of the roads, highways, and streets within the said town, the lines of which have not been, and cannot be certainly ascertained. *Held*—that the functions of a commission appointed under this section were *quasi* judicial, and that an ordinance creating such commission to ascertain the lines of South street in said town, which provided that such commission should run, mark, and lay out South street according "to the original survey thereof, recorded in the clerk's office of Morris county, in Book A, page 17," which survey was the return of a public road laid out by surveyors in 1763, delegates to the commission only ministerial powers, and is not in compliance with this section of the charter.

5. By the act concerning roads, passed in 1760, (2 *Nevill* 347) a road four rods wide, which was found inconvenient or disadvantageous, was subject to alteration and regulation by twelve of the surveyors of the highways—six from the county in which the alteration was proposed, and six from the next county, chosen for the townships nearest the line of the place where the alteration was to be made. *Held*—that after an user by the public of a road re-laid by surveyors called from different counties, as a road four rods wide, for upwards of a century, substantially in accordance with the lines of the road as thus re-laid, the court would presume that the surveyors, as thus organized, had jurisdiction in the premises, and that they conformed to the mode of procedure prescribed by the act, when their return contains on its face anything that the act requires to be inserted in it.

On *certiorari*.

Argued at February Term, 1868, before Justices BEDLE and DEPUE.

State, Taintor, pros., v. Mayor and Council of Morristown.

For plaintiff in *certiorari*, *J. Vanatta*.

Contra, *H. C. Pitney.*

The opinion of the court was delivered by

DEPUE, J. The object of these writs of *certiorari*, is to remove to this court two ordinances passed by the common council of Morristown for opening a street in the said town. The first named writ brings up an ordinance passed on the 25th of July, 1867; and the second writ an ordinance passed on the 4th of September, in the same year. Both these ordinances were adopted for the purpose of opening South street.

By the first and second sections of the ordinance of July, it is enacted that South street shall be opened between Elm street and Madison avenue to the width of sixty-six feet; and that the sidewalks on each side of the street, between the points aforesaid, shall be twelve feet in width, and the wagon way forty-two feet in width—that is to say, twenty-one feet on each side of the centre line of said street.

The twelfth section of the original charter of Morristown, passed April 6th, 1865, empowers the common council to make and establish ordinances and regulations for leveling, grading, curbing, regulating, paving, flagging, or graveling the sidewalks of the town; and by the sixth sub-division of the fourth section of the supplement of March 15th, 1866, they were empowered by ordinance to regulate, clean, and keep in repair the streets, highways, lanes, and alleys of the town, and to prevent and remove obstructions, encroachments, and encumbrances in and upon all streets, highways, and sidewalks. The authority to regulate the streets and sidewalks thus granted, necessarily includes the power to determine the respective widths of each, and how the space appropriated to both shall be apportioned between the two.

The ordinance also directed the street commissioner to proceed to open the street to that width, in conformity to the lines of a survey and map thereof, made by the town

surveyor.   By subsequent ordinances, which bear date respectively on the 6th of August, 1867, and the 4th of September, 1867, all further proceedings under the ordinance of July were suspended until a commission, appointed by the said ordinances to ascertain the lines of the said street, should have performed such duty; and the defendants do not propose to open this street under that ordinance, and expressly disavow any intention to enter upon the premises of the prosecutrix, to carry into effect the ordinance, until the lines of the street shall have been ascertained by proceedings for that purpose under the charter   Of the suspension of proceedings under this ordinance by the subsequent ordinances, the prosecutrix had notice by the return to the writ, and an application might then have been made to dismiss the writ on her own behalf, without costs.

By the evidence before the court, it appears to our satisfaction that South street was a portion of a public highway four rods wide, which was re-laid by surveyors of the highways in 1763.   If we rely on the evidence before us, South street is wide enough to afford space adequate for the roadway and sidewalks proposed by the ordinance.   If, on the other hand, we reject the record of the return of this highway as evidence of the true location and width of the said street, on the ground that the uncertainty in the lines of the street is such that resort should be had to the ascertainment thereof by a commission, under the seventh section of the supplement already referred to, it cannot appear, until such commission has run out and designated the lines of the street, that the prosecutrix is so affected in her interests by this ordinance, that she could call upon the court to set it aside.   In so far as the ordinance prescribes the width of the roadway and sidewalks respectively, it is clearly within the powers of the common council.   To that extent, the ordinance is a lawful and proper exercise of the powers conferred upon the defendants by their charter.   From any injurious effects of the other provisions of the ordinance the prosecutrix is adequately protected by the suspension of pro-

ceedings to effectuate the ulterior object, which was had in view in adopting the ordinance by its subsequent suspension, until the common council could call in aid other proceedings under their charter.

But it is insisted that the ordinance is illegal as a regulation of the respective widths of the roadway and sidewalks, as being in violation of the provisions of the act of March 14th, 1851, entitled "an act to provide for the construction of sidewalks along highways, for the accommodation of foot travelers," (*Nix. Dig.* 751*) in that, by the second section of that act, every owner or occupier of lands fronting on a public road or highway, in any township, city, or ward, is entitled to have sidewalks in front of his premises of the width of one-fifth of the full width of the street; and that the ordinance having in view a street sixty-six feet wide, and assigning forty-two feet to the roadway, and only twelve feet on each side to the sidewalks, restricts the right granted to the adjacent owner by the statute. In *Cross* v. *Morristown*, a case involving the subject matter of the present controversy, (in Chancery, October Term, 1867,) Chief Justice Beasley, sitting as master, held that the act of 1851 did not apply to the streets in towns and cities, the charters of which confer on the corporation the authority to regulate the streets, on the principle that the general legislation on a particular subject must give way to the special legislation on the same subject—a principle that is recognized and made the basis of decision in analogous cases. *State* v. *Branin*, 3 *Zab.* 484; *State* v. *Clark*, 1 *Dutcher* 54; *State* v. *Jersey City*, 5 *Dutcher* 170; *In re Goddard*, 16 *Pick.* 504; *Gregory's case*, 6 *Co.* 20.

There is nothing in the cases of *Mechanics' and Traders' Bank* v. *Bridges*, 1 *Vroom* 112; *State* v. *Miller*, *Ib.* 368, that questions this principle, or militates against its applicability to this case. The court, in those cases, held that the special provisions contained in charters must give way to the general laws of the state in reference to taxation—not because the subject matter was provided for by general laws,

Rev., p. 1009, § 67.

but because the legislature had annexed a repealing clause, abrogating all local or special acts inconsistent with the provisions of the act. These cases, instead of denying the rule stated by the Chief Justice, are in recognition of it, in putting the repeal of special provisions on the narrow ground that the legislature expressly declared the intention to supersede and annul them.

In the case in Hobart, (*Norris* v. *Staps, Hob.* 210,) which was much relied on, the question was as to the power of a fellowship of weavers, incorporated by letters patent from the crown, to adopt by-laws. It was well held, that a special clause authorizing such an organization to make by-laws did not add anything to its implied powers, and that its by-laws were subject to the general law of the realm, as subordinate to it. A special grant of power to a municipal corporation by the legislature is an entirely different thing. Such a grant is the delegation of an authority to legislate by ordinance on the enumerated subjects, and does add to the powers incident to the creation of a corporation. The nu-merous instances in our own state of the grant of such powers in relation to the opening and improvement of streets, the making of sewers, and the assessment of taxes, afford illustrations of this distinction. Mr. Wilcock recognizes the same distinction. In considering the power of a municipal corporation to make ordinances, he considers ordinances under three heads—those which are given by immemorial custom, those which are by-laws made under the incidental powers which every corporation has to make rules for the regulation of its municipal affairs, and those which are prescribed to the corporation by the act of parliament creating it. *Wilcock on Cor.* 73. The first two classes he considers in the light of the general laws of the realm, and as in a measure subordinate to them. *Wilcock on Cor.* 74–100. The last he disposes of with the remark that it is unnecessary to consider what privileges may be granted, or regulations prescribed to a corporation by act of parliament, for the power of the legislature in this respect cannot be de-

fined.    *Wilcock on Cor.* 99.    The powers of a corporation are two fold ; those that are derived from express grant, and those which are incident and necessarily appertain, whether expressed in the grant or not.    *Leggett* v. *The New Jersey Manufacturing and Banking Co., Saxton* 541.

It was urged on the argument that the use of the words " city or ward," in the act, was an express legislative declaration that it was designed that the provisions of the' act should apply to municipal corporations.    The argument is entitled to much force, as applicable to incorporated places where the charters are silent on the subject of the power of the municipal authorities to regulate the streets.    But when the charter of a city or town expressly vests the regulation and control of the streets and highways in the corporation, the argument is entitled to no weight.    The question is not whether the legislature may legislate within the limits of a municipal corporation, but whether general laws shall have controlling effect when the legislature has expressly delegated to the corporation special authority to legislate on the subject by the adoption of municipal ordinances.    It is a question of intention, and the intention is sufficiently manifested by the legislature in vesting the corporation with the unqualified authority to establish ordinances for the regulation of the subject matter.

The *certiorari* in the other case brings up for review the ordinance of September 4th, 1867.    This ordinance was passed in accordance with the provisions of the seventh section of the supplement to the charter of March 15th, 1866. It is entitled " an ordinance for the appointment of commissioners to run, mark, lay out, and designate the lines of South street, from the public square to the limits of Morristown."    The ordinance appoints four freeholders named as commissioners, under the seventh section of the said supplement, who, together with the town surveyor, should constitute a commission to run, mark, lay out, and designate the courses and lines of South street, from the public square to Madison avenue, " according to the original survey thereof,

recorded in the clerk's office of Morris county, in Book A, page 17."

This ordinance cannot be sustained. The seventh section of the act authorizes the establishing of a commission, composed of the town surveyor and four disinterested freeholders, residing in the town, to run, mark, lay out, and designate the lines and courses of the roads, highways, and streets within the said town, the lines of which have not been, and cannot certainly be ascertained, by reason of the indefinite survey, plots, and maps thereof, and to make a map or profile of the same, to be recorded by the town clerk, which said record, map, or profile shall be full evidence of the street, road, or highway, and of its lines and courses. The functions of the commission authorized by this section are *quasi* judicial. They are to ascertain, fix upon, and settle the lines of the street with reference to which a commission is resorted to. The resort to a commission is a concession that the lines of the street, with reference to which the ordinance was passed, are uncertain, and cannot certainly be ascertained. The survey referred to in the ordinance was made in 1763, by surveyors of the highways called to relay a road leading from Morristown green, or common, to Loantico swamp. Whether South street owes its existence to this survey and return, and whether the road thus relaid has or has not been vacated, or altered by the subsequent action of the proper authorities, are questions to be judicially determined by the commission, after hearing parties interested. These functions of the commission the common council has usurped in the ordinance, in prejudging the real matters in controversy. On the hearing, the commission would be justified, by the language of the ordinance, in excluding all inquiry as to the legal continuance of the road referred to in that survey, and as to South street being identical with the road thus relaid. The proof submitted to this court, tending to show that these matters are not, in point of fact, open to any real controversy, will not remove the difficulty. The question here is one of the power of the municipal

authority to pass this ordinance. The ordinance requiring the commission to run out South street by a certain survey, has delegated to it only ministerial powers, and is not in compliance with the seventh section of the supplement of the charter.

Much of the argument of counsel was expended in questioning the validity of the return of the surveyors referred to. By the act of 1760, then in force (2 *Nevill* 347,) a road four rods wide, which was found to be inconvenient to the town, division, or precinct through which it was laid, or was over much disadvantageous to the owner or owners of land through which it passed, was subject to alteration and regulation by twelve of the surveyors of the highways, six from the county in which the alteration was proposed to be made, and six from the next county, chosen for the townships nearest the line of the place where the alteration was to be made. The surveyors, to act in any case, were not selected by the court, and were not set in motion by any order of the court. The application to the surveyors might be made by any person, and was not required to be in writing. The only proceeding, preliminary to the action of the surveyors, was the requirement of twenty days' previous notice of the time and place of their meeting, by public advertisements. If nine of the surveyors so called acquiesced to the proposed alteration, they were required to draw up a return of the road so altered, certifying the courses, distances, and boundaries of the same, with the date affixed, and deliver the same to the clerk of the county in which the road was, to be by him entered in a book kept for the purpose, to be purchased at the county's expense, and called the road book; and thereupon the road so altered was taken and deemed and allowed to be a lawful highway.

The proceedings and return of the surveyors are not before the court for review, and cannot be reviewed in this collateral way. The return is here only as an instrument of evidence. Its conclusive effect in these cases can only be overcome for jurisdictional defects. The chief objection taken

to this return is, that it does not appear that the road, before the alteration was made, was a road four rods wide, and that a board of surveyors, organized from surveyors of different counties, having jurisdiction only over roads four rods wide, the jurisdiction of the surveyors to act in the premises did not sufficiently appear. By the return, the surveyors certify that they were called to relay a road leading from Morristown green, or common, to Loantico swamp, and being all on the spot, that they do alter, regulate, and relay *a four rod* road to the swamp, as follows, setting out the several courses and distances, with reference to monuments that were then fixed and apparent.

It can be gathered from the face of the return, to a reasonable degree of certainty, that the road which the surveyors were called to alter was a road of four rods in width. But the point of the counsel's objection is, that on the authority of *Perrine* v. *Farr*, 2 *Zab.* 356, jurisdictional facts must appear *aliunde*. The return is dated on the ninth of November, 1763, and was filed in the clerk's office of the county of Morris, and recorded in the road book shortly after its date. In analogy with the rules of evidence, admitting court rolls, terriers, and manorial records, when ancient and brought from the proper depository, the return is admissible in evidence, without further preliminary proofs. The map produced in evidence shows that South street is generally coincident with the road relaid by the surveyors. The deviations of the boundaries of South street, as used, from the boundaries of the old road, as ascertained by measuring two rods on each side of the centre line of the survey, are at irregular intervals, and do not materially affect their identity. For more than a century the public has used this highway, and such user has been substantially in accordance with this return, and has been acquiesced in by all parties who were interested. From such user and acquiescence, a strong presumption arises that the action of the surveyors was lawful, which, after so great a lapse of time, fully justifies the court in arriving at the conclusion that public officers, having a

State, Taintor, pros., v. Mayor and Council of Morristown.

jurisdiction generally over highways, were acting with reference to a subject matter in which, in that particular instance, they had power to act.

The next objection is, that it does not appear that the surveyors of the adjoining county, who joined in the return, were those chosen for the townships nearest the line of the place of the proposed alteration. The return is signed by twelve surveyors of the highways. They certify that they were surveyors of the highways of the counties of Morris and Essex, and were legally called to relay this road. By the statute then in force, surveyors of the highways, as a class of public officers, had a general jurisdiction of the subject matter of laying out and altering public highways. That a mistake was made in the selection of individuals from the class in which the jurisdiction resided, would not be fatal to their jurisdiction, when called in question collaterally. At least, the court would be warranted in presuming, after a great lapse of time, in the absence of evidence to the contrary, that the selection was properly made, on the maxim : *Omnia præsumunter rite acta.*

The third objection is, that it does not appear that the statutory notice of the meeting of the surveyors had been given. The act does not require the surveyors to take proof, or be satisfied that proper notice had been given of their meeting, or to return any evidence of compliance with the act in the matter of notice. An omission to give such notice would be a mere irregularity, remediable on proceedings directly to set aside the proceedings of the surveyors. But the giving of notice is not a jurisdictional fact. The return, in this case, is strictly in compliance with the statute, and contains everything that the act requires the surveyors to include in it, and, in the absence of evidence, the court will not presume that there was an omission in a matter entering only into the mode of procedure.

On these points, the opinion of the Chancellor in *Taintor* v. *Morristown*, (Court of Chancery, February Term, 1868,) is in accordance with the views here expressed.

The return of the surveyors is entitled to be received,

whenever offered collaterally as conclusive evidence of the location and lines of this road, until it is set aside by proceedings instituted directly for that purpose.

In the case of *The State* (Taintor, prosecutor,) v. *Morristown*, the writ of *certiorari* is dismissed. In the case of *The State* (Cross, prosecutor,) v. *The Same*, the ordinance under review is set aside.

BEDLE, J., concurred.

CITED *in State, Bodine, pros.,* v. *Trenton,* 7 *Vr.* 201; *State, M. & E. R. R. Co., pros.,* v. *Commissioners, &c.,* 8 *Vr.* 233; *State, Pancoast, pros.,* v. *Troth,* 5 *Vr.* 379; *State, Gregory, pros.,* v. *Jersey City,* 5 *Vr.* 430.